[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12137

_____

D. C. Docket No. 02-00042-CV-1

LYNN GEORGE MAUK,

Petitioner-Appellant,

versus

JAMES LANIER, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 23, 2007)**

Before HULL and MARCUS, Circuit Judges, and BARZILAY,[*] Judge.

HULL, Circuit Judge:

_____

[*]Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

Lynn George Mauk, a Georgia prisoner, appeals the dismissal of his 28 U.S.C. § 2254 petition for writ of habeas corpus. After review and oral argument, we affirm the district court's dismissal of the § 2254 petition for failure to exhaust. We remand, however, to permit the district court to enter a corrected order dismissing Mauk's § 2254 petition without prejudice.

## I. BACKGROUND

### A. State Court Proceedings

On September 17, 1997, around 3:00 a.m., Mauk was driving his truck in Augusta, Georgia, when he came upon Deborah Pride walking along the sidewalk. Although Mauk and Pride had never met before, they spent the next several hours together, including purchasing and consuming drugs together and going to Mauk's motel room. Later that morning, while it was still dark, Mauk was driving Pride home when he pulled into the back of a deserted parking lot, near a wooded area.

At that point, according to Pride's trial testimony, Mauk forced her to leave his truck at knifepoint, tied her hands behind her back, and, among other things, forced her to perform oral sex on him. According to Mauk's testimony, they had stopped in order to finish their drugs, and the subsequent bondage and oral sex were consensual. There is no dispute that, at some point, Pride ran away to a nearby road, at which point a passerby observed Mauk and Pride struggling and

2

stopped to investigate.  Mauk fled but was subsequently arrested.

On November 14, 1997, Mauk was indicted by a Richmond County, Georgia, grand jury for rape, kidnaping, and two counts of aggravated sodomy.  On April 23, 1998, following a jury trial, Mauk was acquitted on the rape count, but was convicted of (1) false imprisonment as a lesser included offense on the kidnaping count, and (2) simple sodomy as a lesser included offense on the first aggravated sodomy count.  The state trial judge granted Mauk's unopposed motion for a directed verdict on the second aggravated sodomy count.  Mauk filed a motion for new trial, which was denied.

On direct appeal, Mauk raised only one issue: whether his sodomy conviction must be reversed in light of the Georgia Supreme Court's decision in Powell v. State, 510 S.E.2d 18 (Ga. 1998), which was issued while Mauk's motion for new trial was pending.  We review Powell and then why the Georgia Court of Appeals concluded Powell, in which the sodomy occurred in a private home, was not applicable to Mauk's case.

In Powell, the Georgia Supreme Court concluded that Georgia's sodomy law, "insofar as it criminalizes the performance of private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent, manifestly infringes upon a constitutional provision which guarantees to the

3

citizens of Georgia the right of privacy." Id. at 26 (quotation marks and citation omitted). Because Powell "was convicted for performing an unforced act of sexual intimacy with one legally capable of consenting thereto in the privacy of his home," the Georgia Supreme Court reversed his conviction. Id.

On February 2, 2000, the Georgia Court of Appeals affirmed Mauk's conviction on direct appeal. See Mauk v. State, 529 S.E.2d 197, 198-99 (Ga. Ct. App. 2000). The Georgia appellate court ruled that Powell was not applicable to Mauk's case. Id. Specifically, the Georgia court noted that "[t]he conduct at issue in Powell took place in the privacy of the defendant's home," whereas in Mauk's case, "the conduct for which Mauk was convicted took place outdoors in a wooded area adjacent to a public road." Id. at 198. The Georgia court then determined that this wooded area "was not a private place within the contemplation of Powell." Id. Accordingly, the Georgia court concluded in Mauk that "the evidence authorized the jury to find that the act of sodomy took place in a public place. The verdict is not inconsistent with such a finding. It is therefore not within the ambit of Powell." Id. at 199.

Thereafter, Mauk petitioned the Georgia Supreme Court for a writ of certiorari. In his petition, Mauk argued, for the first time, that the Georgia Court of Appeals' opinion violated his Sixth Amendment right to a trial by jury and his

4

Fourteenth Amendment procedural due process rights by the Georgia Court of Appeals' finding that Mauk committed sodomy in a public place, even though the jury never made such a determination, and by affirming his conviction on that basis.[1] On July 7, 2000, the Georgia Supreme Court denied certiorari in a two sentence order, and later denied Mauk's motion for reconsideration on July 28, 2000. See Mauk v. State, No. S00C0910, 2000 Ga. LEXIS 598 (Ga. July 7, 2000) (unpublished).

Mauk also petitioned the United States Supreme Court for a writ of certiorari based on essentially the same federal constitutional claims. The Supreme Court denied certiorari on March 19, 2001. Mauk v. Georgia, 532 U.S. 924, 121 S. Ct. 1364 (2001).

Mauk never filed a state court petition for writ of habeas corpus.

**B.      Federal Habeas Petition**

On March 14, 2002, Mauk filed a federal petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, raising the same federal constitutional claims that he first raised in his state petition for certiorari. Specifically, Mauk argued that

---

[1] In relevant part, the first aggravated sodomy count charged that Mauk "did perform a sexual act involving the sex organs of [Mauk] and the mouth of . . . Pride by inserting his penis into the mouth of . . . Pride, said act being done with force and against the will of . . . Pride." Notably, the indictment did not allege where the sexual act took place. However, at trial the evidence was undisputed that the sodomy took place in a wooded area adjacent to a public road.

Powell effectively created a new "essential element" to the offense of sodomy in Georgia – that the offense occur in public and not in private – and that the Georgia Court of Appeals violated Mauk's Sixth and Fourteenth Amendment rights by finding that his offense conduct occurred in a public place when that fact was not found by a jury or charged in the indictment.[2]

On March 1, 2006, the district court dismissed Mauk's § 2254 petition. See Mauk v. Lanier, No. 102-042, 2006 U.S. Dist. LEXIS 11728 (S.D. Ga. Mar. 1, 2006) (unpublished). The district court noted that no Georgia court had held that Powell applied retroactively to cases on collateral review, and that neither the Georgia courts nor the Georgia legislature had recognized that Powell created a new element to the state's sodomy offense. Id. at *3-4. Therefore, the district court determined, based on "[p]rinciples of comity and state exhaustion," that "state courts should have an opportunity to address petitioner's arguments before a federal court considers them." Id. Accordingly, the district court concluded, "[t]o the extent that petitioner here argues that Powell created an element to the sodomy

_____

[2]Mauk's petition for certiorari to the Georgia Supreme Court did not argue that the public nature of the offense was an essential element that must be charged in the indictment, but only that the Georgia Court of Appeals violated his Sixth Amendment right to a jury trial and his Fourteenth Amendment rights by making a public place finding itself. Mauk's petition for certiorari to the United States Supreme Court also asserted that the public nature of the offense was an essential element of the crime that must be charged in the indictment (as well as found by a jury). We need not resolve whether Mauk's jury claim before the Georgia Supreme Court was broad enough to encompass his indictment claim as Mauk failed to exhaust both claims in any event.

6

statute that implicates due process and Sixth Amendment concerns, that issue has not been properly raised and exhausted in state court." Id. at *5.

Mauk requested a certificate of appealability ("COA"), which the district court denied. Thereafter, this Court granted Mauk a COA on the following issue:

> whether the district court erred in finding that appellant's claims – that his Sixth Amendment right to a jury trial and his procedural due process rights were violated when (a) he was convicted of the offense of sodomy absent notice or a jury finding on an essential element of the offense, and (b) the Georgia Court of Appeals found this element on its own – were (1) meritless because no court has held Powell v. State, 270 Ga. 327, 510 S.E.2d 18 (Ga. 1998), retroactively applicable to cases on collateral review, and (2) unexhausted.

## II. DISCUSSION

### A. Retroactivity

On appeal, Mauk argues that the district court erred when it relied on the fact that no Georgia court had held that Powell applied retroactively to cases on collateral review. We agree. Under Georgia law, "a new rule of substantive criminal law must be applied retroactively to cases on collateral review . . . ." Luke v. Battle, 565 S.E.2d 816, 819 (Ga. 2002). Because the Powell decision held that the Georgia sodomy statute "no longer reaches certain conduct [it] is a ruling of substantive law." Id. Thus, to the extent that the district court dismissed Mauk's § 2254 petition on the grounds that Powell had not been held retroactively applicable, the district court's decision was erroneous. However, because we

7

conclude that the district court properly dismissed Mauk's § 2254 petition for failure to exhaust state remedies, any error regarding the retroactivity of Powell is immaterial and does not require a reversal in this case.

## B. Exhaustion

Before bringing a § 2254 habeas petition in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.[3] See 28 U.S.C. § 2254(b), (c). The exhaustion requirement is grounded in principles of comity and reflects a desire to protect the state courts' role in addressing alleged violations of state prisoners' federal rights. See Thomas v. Crosby, 371 F.3d 782, 813 (11th Cir. 2004) (quoting Coleman v. Thompson, 501 U.S. 722, 231, 111 S. Ct. 2546, 2555 (1991)). Although the exhaustion requirement is not jurisdictional, there is a "strong presumption in favor of requiring the prisoner to pursue his available state remedies." Castille v. Peoples, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989) (quotation marks and citation omitted).

In general, a petitioner's federal claim shall not be deemed exhausted where the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The Supreme Court has

---

[3]Exhaustion presents a mixed question of law and fact that we review de novo. Fox v. Kelso, 911 F.2d 563, 568 (11th Cir. 1990).

8

recognized, however, that a claim can be exhausted even when there exists a possibility of further state court review, so long as the claim has been "fairly presented" to the state courts. Castille, 489 U.S. at 350-51, 109 S. Ct. at 1059-60 (quotation marks, emphasis and citation omitted). Thus, in situations where "the State has actually passed upon the claim," or "the claim has been presented as of right but ignored (and therefore impliedly rejected)," the Supreme Court has inferred an exception to the requirement of § 2254(c) based on the assumption that "further state proceedings would be useless." Id. at 351, 109 S. Ct. at 1060. Nevertheless, in Castille, the Supreme Court concluded that this exception does not apply when the claim is presented for the first and only time in certain procedural contexts, as follows:

> Such an assumption is not appropriate, however – and the inference of an exception to the requirement of § 2254(c) is therefore not justified – where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless "there are special and important reasons therefor." Raising the claim in such a fashion does not, for the relevant purpose, constitute "fair presentation."

Id. (citations omitted). Accordingly, the Supreme Court in Castille explicitly rejected the argument that "the submission of a new claim to a State's highest court on discretionary review constitutes a fair presentation." Id.

Here, like in Castille, Mauk's first and only presentation of his federal

claims – that the Georgia Court of Appeals violated his Sixth and Fourteenth

Amendment rights – came in his petition for writ of certiorari before the Georgia

Supreme Court.  Because the Georgia Supreme Court's decision to grant certiorari

is discretionary, see, e.g., Adair v. Traco Div., 14 S.E.2d 466, 469 (Ga. 1941), and

because certiorari can only be granted in cases "which are of gravity or great public

importance," Ga. Const. art. VI, § 6, ¶ 5, we cannot say, in light of Castille, that

Mauk has fairly presented his claims.  Mauk's claims were presented in a

procedural context in which the merits were not considered, as the Georgia

Supreme Court's denial of certiorari does not constitute a ruling on the merits.

See Adair, 14 S.E.2d at 469 (explaining that the Georgia Supreme Court's denial of

a petition for certiorari "'shall not be taken as an adjudication that the decision or

judgment of the Court of Appeals is correct'") (citation omitted); Ezor v.

Thompson, 526 S.E.2d 609, 610-11 (Ga. Ct. App. 1999) (same).  We thus must

conclude that Mauk has not fairly presented his federal constitutional claims to the

Georgia courts and thus has failed to exhaust his state remedies.

We also reject Mauk's argument that he could not have raised his federal

claims in a state habeas petition.  Mauk relies on Roulain v. Martin, 466 S.E.2d

837, 839 (Ga. 1996), for the proposition that a state "habeas court [has] no

authority to consider whether [an appellate] court erred in its disposition of [an]

10

appeal." While this is a correct statement of the "law of the case" doctrine, it is only applicable when a petitioner is attempting to relitigate in a state habeas court an issue that was already "raised and resolved in [the petitioner's] direct appeal." Id. at 838. Here, Mauk is not pursuing claims that were resolved against him in his direct appeal to the state appellate court. Rather, Mauk asserts that his federal constitutional claims arose out of the Georgia Court of Appeals' opinion itself; therefore, his federal claims could not have been resolved by that court. Thus, because the Georgia Court of Appeals (or the Georgia Supreme Court) did not rule on the merits of Mauk's federal constitutional claims, a Georgia habeas court would not be precluded from addressing these claims. Simply put, Mauk could have presented his federal claims to a state habeas court, but did not do so. Mauk has thus failed to exhaust his state court remedies, and the district court did not err in dismissing Mauk's § 2254 petition.

We note, however, that the district court dismissed Mauk's petition with prejudice. We remand for the limited purpose of allowing the district court to enter a corrected order dismissing Mauk's petition without prejudice in accordance with our precedent. See Jimenez v. Fla. Dep't of Corr., ___ F.3d ___, 2007 U.S. LEXIS 6803, at *6 (11th Cir. Mar. 23, 2007) (explaining that the district court should dismiss the § 2254 petition without prejudice to allow the petitioner to return to

11

state court and exhaust his claims).

**AFFIRMED.**