[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 27, 2010
JOHN LEY
CLERK

No. 10-11889
Non-Argument Calendar
_____

D.C. Docket No. 4:06-cv-00514-RH-AK

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Plaintiff - Appellant,

versus

WILLIE BAKER,

Petitioner - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 27, 2010)

Before BLACK, WILSON and FAY, Circuit Judges.

PER CURIAM:

The State of Florida appeals the district court's grant of a writ of habeas

corpus to Willie Baker, a Florida prisoner, on grounds that the exclusion of certain impeachment evidence violated his rights under the Confrontation and Due Process Clauses. The state argues that Baker did not present the Confrontation Clause argument in his 28 U.S.C. § 2254 petition, and did not exhaust the claim in the state courts. The state further argues that the exclusion of the evidence did not violate the Confrontation Clause, and, regardless, the state court reasonably concluded that any such error was harmless. For the reasons set forth below, we affirm.

## I.

In 1999, a 15-year-old girl identified as "D.A." filed an abuse report against Baker, her brother-in-law. He was charged with one count of committing a sexual act on a victim under 16 years of age, by "oral, anal, or vaginal penetration by or union with the sexual organ of another," in violation of Fla. Stat. § 800.04(3) (1998). At trial, D.A. testified that she was living with her sister and Baker in 1999. She said, "I was laying on the couch and my sister went out . . . . So, [Baker] came—out of the blue, just came out touching me, feeling on me. He grabbed my finger, my hand, and took me in their room and he had sex with me with a condom." She added,

2

> He was kissing all over my neck. He was feeling all on my breasts and all between my legs and stuff. And he grabbed my hand and took me in their room.
>
> . . . .
>
> . . . He undressed me and he laid me down on the bed and he had sex with me with a condom. And I told him that I don't go out like that, period."
>
> . . . .
>
> . . . I say, ain't you married to my sister? I do not go out like that.

She testified that, on another occasion, Baker drove uptown looking for her and told her to ride with him. He touched her again and "was going to try to do it again, but [she] would[ not] let him." She said that he was "[k]issing on [her] and feeling on [her] . . . personal thing," but did not have sex with her.

Baker proffered cross-examination of D.A. outside the presence of the jury. She stated that she used to live in Alabama with her grandmother, but she came to Florida because her "auntie's boyfriend" raped her when she was nine years old. He was not prosecuted because "[t]hey couldn't catch up with him." She spent her first couple of days in Florida living with her uncle, Risey Darden, until his grandsons tried to have sex with her. She told the boys' grandmother that they had tried to do so. When asked whether she had also accused Darden of trying to have sex with her, she said, "Not that I know of," and, "I might have." She testified that Darden had not tried to have sex with her, but she might have accused him of

doing so. She later moved in with her other sister and brother-in-law, Angela and Eddie Price. While she was living with them, she accused Eddie of trying to have sex with her, but she later told an investigator that he had not done so. At one time, she accused her brother, Lloyd Andrews, of having sex with her, as well. She testified that Andrews had not had sex with her.

Baker proffered D.A.'s testimony as relevant to her credibility and veracity. The court, however, excluded the evidence on grounds that only general reputation evidence, not specific instances of untruthfulness, could be used for impeachment.

While an investigator was on the stand, the state played Baker's recorded statement, including the following excerpt:

> INVESTIGATOR HAIRE: Willie, there was an abuse report that came in to us from the Department of Protective Services and the abuse report said that DA, we will call her—do you know who I'm speaking about when I say DA?
> MR. BAKER: Yes.
> INVESTIGATOR HAIRE: That DA had said that you had forced her to have sexual intercourse with you two times. Is this true?
> MR. BAKER: Yes.
> INVESTIGATOR HAIRE: It is true?
> MR. BAKER: We started off playing around and it led to other things. And it led around to it. But, didn't nothing happen. I couldn't do it.
> . . . .
> INVESTIGATOR HAIRE: Okay. And inside the house there you said you got to playing around. Start from the beginning and tell me what all happened.

4

MR. BAKER: Well, we started playing around with one another and one thing led to another. And it got down to where I tried to have sex with her. I couldn't. I couldn't do it.

INVESTIGATOR HAIRE: Did you touch her on her breast?

MR. BAKER: No. Maybe around her waist and on her shoulder and stuff like that.

INVESTIGATOR HAIRE: Okay. Did you touch her on her legs or her behind or between her legs?

MR. BAKER: No.

INVESTIGATOR HAIRE: Did you take her clothes off?

MR. BAKER: No. She already pulled them down.

INVESTIGATOR HAIRE: She pulled her clothes down?

MR. BAKER: Uh-huh.

INVESTIGATOR HAIRE: What kind of clothes? What was she wearing?

MR. BAKER: I can't remember exactly. I believe she had on—I believe she had on jeans. . . .

INVESTIGATOR HAIRE: And she pulled those down to try to have sex with you?

MR. BAKER: Uh-huh.

INVESTIGATOR HAIRE: But, because of your condition, you said you weren't able to have sex?

MR. BAKER: I wasn't able.

INVESTIGATOR HAIRE: How old is she?

MR. BAKER: I think she's fifteen.

INVESTIGATOR HAIRE: Okay. Let's see. Her date of birth is in January. So, I guess she would have just turned fifteen. Had you ever had sex with her?

MR. BAKER: Yes.

INVESTIGATOR HAIRE: Now, she said—she mentioned two times. Was there a second time?

MR. BAKER: No.

INVESTIGATOR HAIRE: You did not take her in your car and take her to C & E Farm Road—

MR. BAKER: No.

INVESTIGATOR HAIRE: —and try to have sex with her?

MR. BAKER: No.

5

INVESTIGATOR HAIRE: That did not happen?

MR. BAKER: No, that did not happen.

INVESTIGATOR HAIRE: The only time that you attempted to have sex with her was this one time in your house?

MR. BAKER: That's right.

Outside the presence of the jury, Baker proffered testimony from Andrews, Darden, and Angela Price regarding D.A.'s past allegations of sexual abuse, all of which they denied. The court excluded the evidence. After hearing the remaining evidence, the jury found Baker guilty.

On direct appeal, Baker argued that Florida's evidence laws do not abrogate a defendant's constitutional rights, and, thus, must give way when such laws deny the defendant "the right to constitutional confrontation, or to due process." The proffered false-accusation testimony "presented classic credibility questions," and exclusion of the evidence "interfered with [Baker's] confrontation rights[] and precluded [him] from presenting a full and fair defense." Baker contended that the trial court may not refuse to admit evidence that is critical to a fabrication claim, and failure to admit the evidence of D.A.'s prior false allegations was not harmless. He concluded that the refusal to admit the evidence "gutted [his] defense, denied him his state and federal rights to confront the witness, and denied [him] his state and federal rights to due process."

6

The First District Court of Appeal noted that a witness's credibility generally cannot be attacked with specific acts of misconduct that bear on her truthfulness. It further noted that the Second District Court of Appeal had recognized an exception for impeachment with prior acts of misconduct that involve the witness's prior false accusations of a crime. The court held that, even if it were to adopt the Second District's false-accusation exception, any error in this regard was harmless beyond a reasonable doubt, in light of the "undisputed evidence" that Baker had "admitted twice that he had sexual intercourse with the victim." If Baker had denied the charged sexual contact, the exclusion of the false-accusation evidence might have constituted reversible error, but because he had admitted the act, the alleged false accusations were of no moment. The dissenting judge disagreed with the majority's characterization of Baker's statement, saying that the "so-called admission[s]" might have been mere acknowledgments of the victim's accusations rather than admissions to those accusations, calling the statement "equivocal, at best," and noting that Baker never admitted to either union with or penetration of the relevant portions of D.A.'s anatomy.

After unsuccessfully pursuing state post-conviction relief, Baker filed *pro se* the instant federal petition for a writ of habeas corpus, pursuant to § 2254. He

7

raised two claims for relief: (1) he was denied due process when the state court excluded evidence that D.A. had falsely accused others of sexual crimes in the past, particularly as the court's decision was based on its erroneous finding that any error was harmless in light of his purported confession to law enforcement; and (2) the state court erred in failing to grant a new trial in light of the victim's subsequent recantation, which proved his actual innocence. In particular, Claim 1 alleged that the trial court's exclusion of the evidence and the appellate court's harmless-error determination did "not follow laws created by the state," thus violating his constitutional right to due process, and that the harmless-error determination rested on an incorrect statement of the facts. After the state responded, Baker submitted a reply that invoked the principle of substantive due process and asserted that precluding the jury from hearing the false-accusation testimony caused a miscarriage of justice.

The district court appointed counsel and ordered further briefing. As to Claim 1, Baker stated that he had argued on direct appeal that the exclusion of the false-accusation evidence violated his confrontation rights and precluded him from presenting a full and fair defense. He contended that the appellate court's rejection of his claim incorrectly and unreasonably recited the harmless-error test, reached a conclusion that would have been an incorrect application of the

8

Supreme Court's true harmless-error test, and was based on an unreasonable determination of the facts. The state responded to Baker's Confrontation Clause argument on the merits.

The district court found that Baker's right to effective cross-examination was violated by the exclusion of the false-accusation evidence. The proposed evidence went to the heart of the witness's credibility, and "[i]t [wa]s hard to imagine a good reason for excluding" the evidence of the witness's admission that she had made prior, similar false accusations against others. Furthermore, this error was not harmless, as the victim's testimony was critical to the prosecution, it provided the only evidence of the elements of "oral, anal, or vaginal penetration by, or union with, the sexual organ," and a reasonable jury might have received a significantly different impression of her credibility if the evidence had been admitted. The Florida appellate court had correctly noted that the statute does not require penetration, but that "union" with a sexual organ could consist merely of touching. Baker never admitted, however, to touching the victim's sexual organs or to touching any part of her with his penis, and he unequivocally denied touching her breasts or "between her legs."

The court further found that, in context, Baker's affirmative response to the question, "DA had said that you had forced her to have sexual intercourse with

9

you two times. Is this true?" appeared merely to acknowledge that she had made the allegation. Moreover, Baker's answer of "yes" to the question, "Her date of birth is in January. So I guess she would have just turned fifteen. Had you ever had sex with her?" might have been an acknowledgment of her age, particularly as the question could be heard as asking only whether D.A. would have been 15 if the sex had occurred as alleged. Standing alone, Baker's affirmative response to this question could not be viewed as an unequivocal recantation of his otherwise clear and consistent statements to the contrary. The court found that Baker had admitted to repugnant conduct, but he did not admit to committing the crime of which he was convicted. Accordingly, without reaching Claim 2, the court granted the § 2254 petition.

## II.

We review *de novo* a district court's grant or denial of a habeas petition under § 2254. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir.), *cert. denied*, 79 U.S.L.W. 3128 (U.S. Nov. 29, 2010) (No. 10-288). Factual findings are reviewed for clear error, whereas mixed questions of law and fact, including the district court's conclusion regarding the reasonableness of the state court's application of federal law, are reviewed *de novo*. *See id.*

## III.

The federal courts "follow the principle of party presentation. That is, [they] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S.Ct. 2559, 2564, 171 L.Ed.2d 399 (2008). To the extent that courts have varied from the general party-presentation rule, they usually have done so in order to protect the rights of *pro se* litigants. *Id.* at 244-45, 128 S.Ct. at 2564. *Pro se* pleadings must be liberally construed, though the courts may not serve as *de facto* counsel for the litigant or rewrite an otherwise deficient pleading in order to sustain an action. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), *as recognized by Randall v. Scott*, 610 F.3d 701, 705-06 (11th Cir. 2010).

Moreover, before bringing a federal habeas action, the petitioner must exhaust all state court remedies available for challenging his conviction, either on direct appeal or in a state post-conviction motion. § 2254(b)-(c). Exhaustion of state remedies presents a mixed question of law and fact that we review *de novo*. *Mauk v. Lanier*, 484 F.3d 1352, 1357 n.3 (11th Cir. 2007). Exhaustion requires the petitioner to fairly present his federal claims in the state courts, in order to give

11

the state courts the first opportunity to hear and resolve the claims. *Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007). "A habeas petitioner exhausts available state remedies when he fairly presents his claim for a state remedy even if the state never acts on his claim." *Id.* at 1369.

The Sixth Amendment's right to cross-examination of witnesses is incorporated against the states through the Fourteenth Amendment's Due Process Clause. *See McDonald v. City of Chicago*, 561 U.S. __, 130 S.Ct. 3020, 3034 & n.12, 177 L.Ed.2d 894 (2010) (citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)).

Here, Baker's *pro se* petition did not specify whether he claimed a violation of procedural due process, substantive due process, or both. Claim 1 referred to "due process," vaguely asserted that the state courts must follow state law, and primarily discussed the merit of the appellate court's denial of the false-accusation-evidence claim, which had challenged the exclusion of the evidence on confrontation and due-process grounds. His subsequent *pro se* reply mentioned the concept of substantive due process and discussed the miscarriage of justice caused by preventing him from introducing the false-accusation evidence. His counseled memorandum discussed the Confrontation and Due Process Clauses at length, and the state responded on the merits without suggesting that Baker was

12

required to amend the petition in order to make the Confrontation Clause argument. Liberally construing the *pro se* pleadings and reading them as a whole with the counseled memorandum, the district court did not err in treating Claim 1 as having raised a claim of a violation of substantive due process, specifically through a Confrontation Clause error. *See Greenlaw*, 554 U.S. at 244-45, 128 S.Ct. at 2564.

As to the state's exhaustion argument, Baker's brief on direct appeal clearly and repeatedly stated that exclusion of the false-accusation evidence had violated his constitutional rights to confrontation and due process, including explicit mention of his "state *and federal* rights to confront the witness, and . . . his state *and federal* rights to due process." Thus, he did fairly raise his Sixth and Fourteenth Amendment claim in the state appellate court, irrespective of that court's decision to decide the issue on harmless-error grounds without resolving the constitutional question. *See Ogle*, 488 F.3d at 1368-69. Accordingly, Baker's state-court remedies have been exhausted.

IV.

Under § 2254(d), a federal court may not grant habeas relief on claims that were previously adjudicated in state court, unless the state-court adjudication "resulted in a decision that was contrary to, or an unreasonable application of,

13

clearly established [f]ederal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." § 2254(d)(1)-(2). A state-court decision is contrary to clearly established precedent if it applies a rule that contradicts the governing law set forth in Supreme Court case law, or if it reaches a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward*, 592 F.3d at 1155. A state-court decision involves an unreasonable application of clearly established federal law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. *Id.*

The Confrontation Clause guarantees the defendant the opportunity to cross-examine the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). "[T]he exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 678-79, 106 S.Ct. at 1435 (quotation marks omitted). Trial judges retain wide latitude to impose reasonable limits on cross-examination of a witness, based on concerns about harassment, prejudice, confusion of the issues, the witness's safety, interrogation that is repetitive or only marginally relevant, and other concerns. *Id.* at 679, 106

14

S.Ct. at 1435. Yet the trial court may not prohibit all questioning of the witness about an event that the jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony. *See id.* "The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quotation marks omitted). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (quotation marks and alteration omitted).

"While some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, the focus of the Confrontation Clause is on individual witnesses." *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1435. "Accordingly, the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Id.* Nevertheless, an otherwise valid conviction

15

should not be set aside if the error was harmless beyond a reasonable doubt. *Id.* at 684, 106 S.Ct. at 1438 (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Whether an error was harmless depends on a variety of factors, such as the importance of the witness's testimony and the presence or absence of corroborating or contradictory evidence. *Id.*

In *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, the Supreme Court stated that evidence of a witness's prior crime may be used in a general attack on the witness's character for truthfulness, or as a particular attack directed at revealing possible biases, prejudices, or ulterior motives, as they relate directly to the issues or personalities in the case. As the witness's testimony provided a crucial link in the proof of the case against Davis, the witness's accuracy and truthfulness were key to the prosecution. *Id.* at 318, 94 S.Ct. at 1111. The state's interest in protecting the anonymity of juvenile offenders did not outweigh the serious damage that the evidence would have done to the prosecution, and, thus, exclusion of the evidence constituted a violation of the Confrontation Clause. *See id.* at 318-20, 1111-12.

In *Olden*, 488 U.S. at 228-29, 109 S.Ct. at 481-82, the trial court excluded any evidence that the defendant was in an extramarital relationship with the purported rape victim and that the victim was lying to protect her marriage. *See*

*id.* at 230-31, 109 S.Ct. at 482. The Supreme Court held, "It is plain to us that a reasonable jury might have received a significantly different impression of the witness'[s] credibility had defense counsel been permitted to pursue his proposed line of cross-examination" into the victim's reason for lying about the rape. *Id.* at 232, 109 S.Ct. at 483 (quotation marks and alteration omitted). "[T]he limitation here was beyond reason," and the "exclusion of evidence "with such strong potential to demonstrate the falsity of [the victim's] testimony" was unjustifiable under the circumstances. *Id.* Furthermore, the victim's testimony was crucial to the prosecution's case and directly contradicted the defendant's account of that night, so the restriction on his right to confrontation was not harmless beyond a reasonable doubt. *Id.*

Here, D.A. was questioned under oath about her past accusations of sexual assault by male relatives. She testified that her "auntie's boyfriend" raped her when she was nine years old, but he was never caught. She said that Risey Darden's grandsons tried to have sex with her during the day and a half that she spent at Darden's home, but Darden denied that it had happened. She said that she might have accused Darden of having sex with her, as well, but he had not done so. While she was living with Eddie Price, she accused him of trying to have sex with her, but later told an investigator that he had not done so. While she was

17

living with Lloyd Andrews, she accused him of having sex with her, as well, but she testified that he had not done so. Thus, D.A. herself explicitly stated that the allegations against Price and Andrews were false, she acknowledged that she might have made a third false accusation against Darden, and Darden would have testified that the allegation against his grandsons also was false.

D.A.'s truthfulness was key to the prosecution, and the evidence of her prior false accusations not only spoke to her general character for truthfulness, but particularly attacked her truthfulness and motivation for testifying as they related directly to her allegation against Baker. *See Davis*, 415 U.S. at 316, 318, 94 S.Ct. at 1110-11. The evidence that D.A. had habitually lied about sexual assaults by family members had "strong potential to demonstrate the falsity of [her] testimony" in this case, and "a reasonable jury might have received a significantly different impression of [her] credibility had defense counsel been permitted to pursue his proposed line of cross-examination." *See Olden*, 488 U.S. at 232, 109 S.Ct. at 483. Furthermore, the trial court only limited the testimony in light of the state's rules of evidence regarding impeachment, rather than out of concerns such as harassment, prejudice, confusion, or a policy of protecting sexual-assault victims. Supreme Court precedent clearly indicates that the exclusion of the false-accusation evidence violated Baker's rights under the Sixth and Fourteenth

18

Amendments. Thus, failure to find a Confrontation Clause violation would constitute an unreasonable application of federal law.

V.

State courts' findings of fact are entitled to a presumption of correctness. *Ward*, 592 F.3d at 1155-56 (citing § 2254(e)(1)). "Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*), *cert. denied*, 129 S.Ct. 1670 (2009). However, when a state court's adjudication of a claim is based on an unreasonable determination of the facts, we are not bound to defer to the unreasonably found facts or to the legal conclusions that flow from them. *Id.* In such an instance, the petitioner's claim is reviewed *de novo*. *Id.* at 1288 & n.5.

On collateral review of "constitutional error of the trial type," the federal courts do not apply the harmless-error standard that was set forth in *Chapman* and *Van Arsdall*. *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993). Rather, we ask "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637, 113 S.Ct. at 1722 (quotation marks omitted). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled

19

to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Id.* (quotation marks omitted). The federal courts apply *Brecht* regardless of which harmless-error standard was applied by the state court. *Vining v. Sec'y, Dep't of Corr.*, 610 F.3d 568, 571 (11th Cir. 2010).

The Florida offense of sexual battery on a child under 16 years of age prohibits "oral, anal, or vaginal penetration by, or union with, the sexual organ of another." Fla. Stat. § 800.04(3) (1998), *cross-referencing* § 794.011(1)(h). "Union permits a conviction based on contact with the relevant portion of anatomy, whereas penetration requires some entry into the relevant part, however slight." *Seagrave v. State*, 802 So.2d 281, 287 n.7 (Fla. 2001).

In reviewing Baker's statement to the investigator, the district court correctly found that Baker unequivocally denied touching D.A.'s breasts, bottom, or "between her legs." He admitted only to touching "around her waist and on her shoulder and stuff like that." He said that he tried to have sex with her but could not, apparently because of a physical condition, and that D.A., not Baker, removed her jeans. He admitted only to trying to have sex with her the one time at the house, while unequivocally denying that he tried to have sex with her in his car.

The district court did not clearly err when it found that Baker's answer of "yes" to the question, "DA had said that you had forced her to have sexual

20

intercourse with you two times. Is this true?" appeared in context of other denials to be a mere acknowledgment of the accusation. The court also did not clearly err when it found that Baker's other "yes," to the question, "Let's see. Her date of birth is in January. So, I guess she would have just turned fifteen. Had you ever had sex with her?" appeared in context of other denials to be a confirmation of her age, rather than an admission to some other sexual encounter. The court correctly noted that a jury would not be required to accept this one-word answer as a recantation of the otherwise clear and consistent statements that Baker never had sex with the victim because he was unable to do so and never touched her breasts or "between her legs."

Furthermore, the state argues merely that Baker admitted to trying to have sex with D.A., not to completing the sex act. Baker was neither charged with attempt to commit a sexual act, nor convicted of attempt as a lesser included offense. Baker's admission that he "tried to have sex with her" does not indicate what form his attempt took, but he repeatedly denied that it included touching her in a prohibited area, and he never suggested that he actually penetrated or touched her with his penis, as required by § 800.04(3).

The record clearly does not support the state appellate court's finding that the "undisputed evidence" showed that Baker had admitted to having sex with

D.A. Accordingly, this unreasonable determination of the facts is not entitled to deference, nor is the harmless-error finding that flowed from it. *See Jones*, 540 F.3d at 1288 & n.5. As D.A.'s testimony provided the only evidence of penetration or union, the exclusion of evidence that likely would have discredited her allegations had a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 637, 113 S.Ct. at 1722. Thus, the district court correctly found that the Confrontation Clause error was not harmless.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**