[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 12, 2011
JOHN LEY
CLERK

_____

No. 09-15602

_____

D. C. Docket No. 05-14137-CV-AJ

ALPHONSO CAVE,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL OF THE STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 12, 2011)

Before EDMONDSON, HULL and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Alphonso Cave, a Florida state prisoner under sentence of death, appeals the district court's denial of his application for habeas relief under 28 U.S.C. § 2254. He raises five issues for our review, including three claims of ineffective assistance of counsel, an allegation that the district court applied an erroneous standard of review, and an argument that his sentencing violated *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002). Having determined that the district court's well-reasoned opinion properly resolved all of these issues, we affirm.

I.

In 1982, Cave was convicted of first-degree murder and kidnapping for his role in an armed robbery and abduction that resulted in the death of a young convenience store clerk in Stuart, Florida. On direct appeal, the Florida Supreme Court summarized the crime as follows:

> Cave and three accomplices left Ft. Pierce, Florida, on the evening of April 26, 1982, and drove to Stuart, Florida. They arrived in Stuart at approximately 11 p.m. that evening. The driver, and owner of the car in which all four rode, was John Earl Bush. The other two accomplices were J.B. ("Pig") Parker and Terry Wayne Johnson ("Bo Gator"). At approximately 3 a.m. on the following morning, the four men drove to a convenience store in Stuart. Cave and two of the men entered the store where Cave held a hand gun on the youthful female clerk and demanded the store's cash. The clerk surrendered the cash, whereupon she was taken from the store and placed in the back seat of the car. The men drove her to a rural area approximately thirteen miles

2

away where she was removed from the car by the four men. After leaving the car, [Bush] stabbed the victim and, when she fell, [Parker] fired a single lethal shot into the back of her head.

*Cave v. State*, 476 So. 2d 180, 183 (Fla. 1985) (per curiam).[1]

Following a 7-5 death recommendation by the jury, the trial court sentenced Cave to death. Since that time, Cave's case has been the subject of extensive post-conviction litigation, resulting in two subsequent sentencing proceedings.[2] The counsel whose allegedly ineffective assistance is now at issue represented Cave in both of these later proceedings.

In the most recent sentencing—in 1996—pursuant to a jury recommendation of 11-1, the trial court again sentenced Cave to death. It found four aggravating circumstances: (1) the murder was committed during the flight following a robbery and during a kidnapping; (2) the murder was especially heinous, atrocious, and cruel; (3) the murder was committed in a cold, calculated, and pre-meditated manner; and (4) the murder was committed to avoid an arrest. The trial court also found one statutory mitigating circumstance—that Cave had no significant prior

[1] At earlier points in the life of this case, the identities of the stabber and shooter were in dispute. In the instant appeal, however, it is undisputed that Cave was neither the stabber nor the shooter, so we have altered the factual summary to so reflect.

[2] For a full summary of the case's history, see the district court's Order Denying Habeas Corpus Petition. *Cave v. McDonough*, No. 05-14137, at *1–4 (S.D. Fla. Sept. 28, 2009).

3

criminal activity—and several non-statutory mitigating circumstances,[3] but gave them all little weight.  Over a dissent by Justice Anstead, the Florida Supreme Court affirmed Cave's sentence.  *See Cave v. State*, 727 So. 2d 227, 232 (Fla. 1998) (5-2 decision).

Cave subsequently filed a motion for post-conviction relief in state court under Florida Rule of Criminal Procedure 3.851.  After an evidentiary hearing, the trial court denied Cave's request for relief on the merits, and—in a substantial written opinion—the Florida Supreme Court affirmed.  *See generally Cave v. State*, 899 So. 2d 1042 (Fla. 2005).  In 2005, Cave filed a federal application for a writ of habeas corpus in the Southern District of Florida.  The district court denied Cave relief, and this appeal followed.

## II.

At the outset, we address Cave's arguments that the district court applied an erroneous standard of review.

Because Cave petitions for habeas relief under 28 U.S.C. § 2254 on claims that the state courts previously adjudicated on the merits, we are restricted in our

---

[3] The non-statutory mitigators were: (1) Cave was not the shooter; (2) Cave saved someone's life when he was young; (3) Cave was under the influence of alcohol or marijuana at the time of the crime; (4) Cave was a good son, neighbor, worker, and father; (5) Cave's only son died as a result of a hit-and-run accident; (6) Cave expressed remorse; (7) Cave confessed to his role in the crime; and (8) Cave improved himself while in prison.

ability to grant federal relief. In order to grant his application, we must find not only that Cave's constitutional claims are meritorious, but also that the state court's resolution of those claims: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1)–(2). We review a district court's decision to grant or deny a habeas petition *de novo*, including its determination of whether the state court's decision was unreasonable. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002).

Cave argues that "the district court misinterpreted the degree of deference which had to be paid to the state court's findings of facts and conclusions of law," questioning the court's formulation of § 2254(d)'s restriction on federal habeas relief and its relationship to § 2254(e)'s presumption of correctness for factual determinations made by the state court. We address these arguments in turn.

A.

Cave invokes the Supreme Court's seminal decision interpreting the Antiterrorism and Effective Death Penalty Act's amendments to § 2254's statutory language, *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000), to argue that

the district court erroneously deferred to the state court's legal conclusions on his ineffective assistance claims, employing inappropriately "heightened deference." His argument is based on the following quotations from Section II of Justice Stevens's opinion in that case:

> "Section 2254(d) requires us to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law 'as determined by the Supreme Court of the United States' that prevails."

*Williams*, 529 U.S. at 387 (Stevens, J., concurring) (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320, 117 S. Ct. 2059 (1997)); and

> AEDPA plainly sought to ensure a level of "deference to the determinations of state courts," provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.
>     On the other hand, it is significant that the word "deference" does not appear in the text of the statute itself. Neither the legislative history nor the statutory text suggests any difference in the so-called "deference" depending on which of the two phrases is implicated. Whatever "deference" Congress had in mind with respect to both phrases, it surely is not a requirement that federal courts actually defer to a state-court application of the federal law that is, in the independent judgment of the

6

federal court, in error.

*Williams,* 529 U.S. at 386–87, (Stevens, J., concurring) (footnote omitted) (citations omitted).

While these quotes certainly support Cave's arguments, they do not represent the controlling interpretation of § 2254(d). Justice Stevens announced the judgment of the Court, but a majority of the justices did not join in his opinion's second section, interpreting the AEDPA amendments to the habeas statute. Instead, a majority of the Court endorsed Justice O'Connor's alternative interpretation, offered in Section II of her opinion. It is this latter interpretation of the statutory language that binds this Court and specifically disclaims a reading of § 2254(d) that, like Cave's, would allow a federal court to substitute its own judgment on the merits of a habeas claim for that of the state court without first finding that the state court's resolution was *unreasonable*. *See id.* at 410 (O'Connor, J., writing for the majority) ("The term 'unreasonable' is no doubt difficult to define. That said, . . . the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

In several recent decisions, the Supreme Court has re-emphasized that AEDPA mandates highly deferential review of state court decisions. In

7

*Harrington v. Richter*, – U.S. –, 131 S. Ct. 770 (2011), for example, the Supreme

Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786–87 (citations omitted) (internal quotation marks omitted). *See also*

*Premo v. Moore*, – U.S. –, 131 S. Ct. 733, 740 (2011) ("The standards created by

Strickland and § 2254(d) are both highly deferential, and when the two apply in

tandem, review is doubly so." (citations omitted) (internal quotation marks

omitted)).

Similarly, in *Renico v. Lett*, 559 U.S. –, 130 S. Ct. 1855 (2010), the Supreme

Court stated:

> We have explained that an *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue

8

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.

*Id.* at 1862 (citations omitted) (internal quotation marks omitted).

We find no error in the district court's application of this standard.

B.

Cave next argues that the district court erred by reading § 2254(e)(1)'s clear-and-convincing evidence burden into § 2254(d)(2)'s reasonableness restriction on federal habeas relief for claims decided on factual bases in state court.

Section 2254(d)(2) permits federal courts to grant habeas relief when the state court's merits adjudication "resulted in a decision that was based on an *unreasonable* determination of the facts in light of the evidence presented to the State court proceeding." *Id.* (emphasis added). However, in the statute's next subsection, 2254(e)(1), Congress mandated that "a determination of a factual issue made by a State court shall be presumed to be correct," and that a habeas petitioner bears the burden of rebutting this presumption by "clear and convincing evidence." Courts have struggled to interpret how these abutting standards interact in the

9

context of fact-based challenges to state court adjudications.[4]

While reciting its standard of review, the court below stated:

> Habeas relief may be granted if the state court's determination of the facts was unreasonable. "A state court's determination of the facts, however, is entitled to deference" under § 2254(e)(1). This means that findings of fact by a sate [sic] court are presumed to be correct, and a habeas petitioner must rebut that presumption by clear and convincing evidence.

*Cave v. McDonough*, No. 05-14137, at *5 (S.D. Fla. Sept. 28, 2009) (citations omitted).

Cave contends that the district court erred by requiring him to show that the

---

[4] Compare *Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S. Ct. 1029 (2003), stating:
> It was incorrect for the Court of Appeals, when looking at the merits, to merge the independent requirements of §§ 2254(d)(2) and (e)(1). AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions;

with *Wood v. Allen*, – U.S. –, 130 S. Ct. 841, 848–49 (2010):
> Notwithstanding statements we have made about the relationship between §§ 2254(d)(2) and (e)(1) in cases that did not squarely present the issue, . . . we have explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2), *see Rice v. Collins*, 546 U.S. 333, 339, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006). . . . Although we granted certiorari to resolve the question of how §§ 2254(d)(2) and (e)(1) fit together, we find once more that we need not reach this question, because our view of the reasonableness of the state court's factual determination in this case does not turn on any interpretive difference regarding the relationship between these provisions.

state court's decision was based on a determination of the facts that was clearly-and-convincingly unreasonable. The Respondents ("State") offer a two-fold response, first asserting that this Court has repeatedly held that "claims under (d)(2) must use the standard set out in (e)[(1)]," citing *Henyard v. McDonough*, 459 F.3d 1217, 1240 (11th Cir. 2006) (per curiam) and *Marquard v. Secretary for the Departmet of Corrections*, 429 F.3d 1278, 1303 (11th Cir. 2005), but then arguing that the distinction between these two standards is unnecessary to decide this case. We agree only with this latter proposition.

*Henyard* and *Marquard* merely contain recitations of law in their "standards of review" sections that paraphrase the statutory text.[5] These are not holdings. *See*

---

[5]  For example, *Henyard* states:

> Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review of a final state habeas judgment "is greatly circumscribed and is highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). First, § 2254(e)(1) instructs us to be highly deferential to state court factual determinations, stating that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Haliburton v. Sec'y for Dep't of Corr.*, 342 F.3d 1233, 1238 (11th Cir. 2003).

459 F.3d at 1240.

> And *Marquard* states:
> Our review is highly deferential. First, § 2254(e)(1) establishes the following standard of review for factual determinations made by a state court: "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Second, § 2254(d) allows

11

Black's Law Dictionary 749 (8th ed. 2004) (defining a *holding* as, "[a] court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision"). We are bound by language in prior cases when that language answers questions *actually presented* and *decided*, or is otherwise necessary to the answers of those presented and decided questions. *See United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("What matters in discerning whether a rule of law expounded by a court is in fact holding is whether it was *necessary* to the result reached, or, in the alternative, could be discarded without impairing the foundations of the holding.").

We acknowledge that one can find similar recitations of law in our cases that assume § 2254(d)(2) and § 2254(e)(1) fit together in the way the State advocates. However, as we have previously observed, "[n]o court has fully explored the interaction of § 2254(d)(2)'s 'unreasonableness' standard and § 2254(e)(1)'s 'clear and convincing evidence' standard." *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d

federal habeas relief to be granted for a claim adjudicated on the merits in state court only if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Robinson*, 300 F.3d at 1342–43.

429 F.3d at 1303.

1273, 1294 n.51 (11th Cir. 2007). Moreover, just two years ago while sitting *en banc*, we reviewed a panel decision applying the very construction of § 2254(d)(2) urged on us by the State and decided that—at the very least—§ 2254(e)(1)'s clear-and-convincing standard does not always apply to fact-driven challenges to state detentions:

> Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence. *Id.* § 2254(e)(1). However, when a state court's adjudication of a habeas claim "result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *Id.* § 2254(d)(2), this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them. *See Taylor v. Maddox*, 366 F.3d 992, 1008 (9th Cir. 2004) ("When we determine that state-court fact-finding is unreasonable, . . . we have an obligation to set those findings aside . . . "); *see also Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007) (declining to apply AEDPA deference when state court made unreasonable determination of law under 28 U.S.C. § 2254(d)(1)) . . . . Because the Georgia Supreme Court unreasonably determined the facts relevant to Jones' Sixth Amendment claim, we do not owe the state court's findings deference under AEDPA. We therefore apply the pre-AEDPA *de novo* standard of review to Jones' habeas claims.

*Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc). *See also Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (finding state court unreasonably determined the facts under 2254(d)(2) and applying *de novo* review).

13

We have not yet had an occasion to completely define the respective purviews of (d)(2) and (e)(1), and this case presents no such opportunity. We find that the district court's fact-based decisions below did not turn on any distinction between "unreasonableness" and a "clear-and-convincing unreasonableness." The state court's decisions on Cave's claims were not based on unreasonable factual determinations in light of the evidence before it under any standard. Consequently, Cave's challenge on this front fails. *See Wood v. Allen*, – U.S. –, 130 S. Ct. 841, 845 (2010) ("We conclude . . . that the state court's factual determination was reasonable even under petitioner's reading of § 2254(d)(2), and therefore we need not address that provision's relationship to § 2254(e)(1). Accordingly, we affirm the judgment of the Court of Appeals on that basis.").[6]

---

[6] The point made by my concurring colleague is well taken, and I agree that this subsection's discussion does not change (nor does it seek to change) any prior holdings of this Court. However, I feel that it is a valuable addition to this opinion for the following reasons.

The State in this case forcefully argued that this Circuit has "repeatedly held" that § 2254 is constructed so as to require petitioners like Cave to prove their entitlement to relief under § 2254(d)(2) by clear and convincing evidence. Additionally, the careful and conscientious district judge below recited legal standards seeming to adopt the same erroneous assumption. These errors are not isolated to the case at bar. There is a troubling trend among litigants and district courts in this Circuit to assume that we have previously resolved this important question of statutory construction. This pervasive misapprehension of our precedent not only has potentially life-and-death ramifications for habeas petitioners like Cave, but it also makes it substantially less likely that this difficult question will be properly presented for our review in the future. Given these facts, I am of the belief that it is responsible, as well as necessary, for us to call attention to this misunderstanding.

As I hope is clear from the foregoing text, this brief discussion simply reprises what we have previously observed: in no case have we had the opportunity to articulate exactly how § 2254(d)(2) interacts with § 2254(e)(1). *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1294 n.51 (11th Cir. 2007). *See also Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en

14

III.

We now turn to the gravamen of Cave's application: his claims that he was denied the assistance of constitutionally effective counsel.

Cave raised numerous claims of ineffective assistance below, but on appeal, his arguments revolve around three core claims: (1) that he was denied effective assistance of counsel because his attorney's penalty-phase strategy was based on a misunderstanding of Florida law; (2) that he was denied effective assistance of counsel when his attorney failed to perpetuate or utilize an exculpatory statement made by co-defendant Bush on the eve of his execution; and (3) that he was denied effective assistance of counsel when his attorney failed to object to an allegedly improper line of questioning during *voir dire*. Having carefully reviewed the district court's order, we find no error in its disposition of these claims.

A.

The federal law governing ineffective assistance claims is well settled. *See generally Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the

---

banc) (applying § 2254(d)(2)'s reasonableness standard without § 2254(e)(1)'s clear-and-convincing-evidence requirement); *Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (same).

defense." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527 (2003) (citing *Strickland*, 466 U.S. at 687). Under the performance prong, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. Under the prejudice prong, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a challenge to a death sentence, this latter prong requires that there be "a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695.

As noted above, because the state court previously adjudicated these claims on their merits, Cave has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable. *Lett*, 130 S. Ct. at 1862; *Williams*, 529 U.S. at 409. Per our discussion above, the Supreme Court recently reminded us that habeas relief under § 2254(d) serves as a "guard against extreme malfunctions in the state criminal justice systems," *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781 (1979) (Stevens, J., concurring)), and, as such, federal relief under that provision must be limited to claims where the prior

16

state court ruling was an "error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 787.

B.

Cave's first claim of ineffective assistance relates to counsel's misunderstanding of Florida law. As illuminated during the state post-conviction evidentiary hearing, counsel designed Cave's penalty-phase strategy laboring under the mistaken belief that, if he were able to ensure the prosecution's proof of aggravation was limited to circumstantial evidence, so long as his own presentation established via direct evidence (*i.e.* Cave's testimony) an alternate theory of the crime that was not inconsistent with that circumstantial evidence, a death sentence would be overturned on appeal. Counsel dubbed this theory the "circumstantial evidence rule." This understanding of the law was erroneous.

Cave contends that basing one's trial strategy on such a misunderstanding of law constitutes deficient performance under *Strickland*. As an abstract proposition, the district court agreed; so do we. *See Green*, 595 F.3d at 1251 ("[T]he Supreme Court has explained that decisions that are based on mistaken beliefs certainly are neither strategic nor tactical." (citing *Kimmelman v. Morrison*, 477 U.S. 365, 383–87, 106 S. Ct. 2574 (1986))); *see also Horton v. Zant*, 941 F.2d 1449, 1461 n.30 (11th Cir. 1991) ("[S]o called 'strategic' decisions that are based on a

mistaken understanding of the law . . . are entitled to less deference.").  However, as the district court rightly noted, it is Cave's burden to link this abstract deficiency to specific, unprofessional conduct of counsel that may reasonably have impacted the trial's result.

We interpret Cave's argument on appeal with respect to this misunderstanding-of-law claim to consist of three pieces: (1) a broad argument that Cave was *generally* prejudiced by counsel's overarching misunderstanding of law because the misunderstanding undermined counsel's strategy; and two concrete sub-claims, based on counsel's failure to (2) introduce mental-health mitigation evidence and (3) avoid mention of a prior rape arrest.  We address each of these arguments in turn.

1.

Cave contends that he was generally prejudiced by counsel's misunderstanding of law—or in the words of penalty-phase counsel at the evidentiary hearing, "procedurally prejudiced"—in that each of the defense's tactical decisions was made in light of and colored by counsel's misunderstanding. But for that misunderstanding, Cave argues, he might have chosen to pursue a different mitigation strategy or to introduce additional mitigating evidence.  The gist of the argument is aptly captured by two quotations drawn from the

18

evidentiary-hearing testimony of Cave's counsel and offered in Cave's brief:

> [I]f we had been, or should have been reasonably certain that the circumstantial evidence rule is out the window and wasn't a factor, then Mr. Cave could have evaluated whether or not to introduce that type of evidence[7] based on a different scenario. And he didn't have that opportunity.
>
> * * *
>
> But what I suggest to you is that the choice was taken from Mr. Cave when they changed the rule midstream,[8] and ultimately that's where the prejudice factor comes in. It was procedural prejudice, because he didn't have the choice. The choice was made for him. And I think that's unfair.

Though such testimony might demonstrate that Cave was prejudiced by counsel's misunderstanding of law in the everyday sense of the word, it falls short of satisfying the prejudice requirement of *Strickland*.

The Supreme Court's definition of prejudice is premised on the belief that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

---

[7] At the time, counsel was discussing his decisions (1) not to introduce expert mental-health testimony for fear that it would "open the door" to harmful evidence and (2) not to introduce evidence of the various and conflicting theories of the case the prosecution had offered at different proceedings and against different defendants.

[8] Testimony showed that counsel believed his interpretation of Florida law was not erroneous, but rather that Cave's was a "pipeline" case, and the Florida Supreme Court changed the state of the law during the pendency of Cave's appeal.

judgment." *Strickland*, 466 U.S. at 691. Reasoning that "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial," the Court decided that a habeas petitioner must bear the burden of "affirmatively prov[ing]" that counsel's unprofessional conduct had some tangible degree of impact on the proceeding's result. *Id.* at 693. Since "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the *outcome* of the proceeding" the Supreme Court decided that the appropriate degree of impact (*i.e.* prejudice) a petitioner must show is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 691–92, 694 (emphasis added). The Court went on to define a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Consequently, even if we assume counsel performed deficiently, Cave must demonstrate more than a theoretical possibility that he *could* have done something differently. Instead, he must show both a reasonable probability that he *would* have done something differently and how that change would have impacted his sentence. Apart from the two specific sub-claims addressed below, we agree with the district court that a broader look at the evidentiary-hearing testimony of

counsel shows no reasonable probability that, but for counsel's misunderstanding of law, the result of the proceeding would have been different.[9]

## 2.

Cave argues that counsel was ineffective for failing to present evidence of mental health mitigation, other than Cave's own testimony. In particular, Cave argues that counsel should have presented testimony from various mental health experts who evaluated Cave prior to sentencing. The Florida Supreme Court

---

[9] At various points in the evidentiary hearing, in addition to making the statements offered by Cave in his brief, counsel also admitted that there were compelling non-circumstantial-evidence-rule reasons to structure Cave's mitigation case in the way that he did. For example:

> [T]here's a very strong argument to be made that it was virtue to keep this case clean and circumstantial evidence [sic] under any standard.
>
> * * *
>
> We might have gone back over the question of psychological testing. . . . I mean, everything would have been up in the air. But that doesn't mean that ultimately the decisions would have come out any differently.
>
> * * *
>
> But again, the trade-off probably isn't there in favor of using a psychologist when it might open the door to some of this negative information.
>
> * * *
>
> Did [my perception of the standard of review] make a difference, I can't make that call. Mr. Cave would have to speak for himself on that issue. But in terms of whether it would have made a difference on the mitigating circumstances that I presented, I don't think so.

Though counsel's opinions as to the prejudice resulting from his deficient performance are not dispositive, *cf. Chandler v. United States*, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000) (en banc), given that Cave's prejudice argument relies so heavily on counsel's testimony, these counter-quotes are severely detrimental to his claim.

considered this claim and determined that counsel's decision not to present such testimony was a reasonable strategic decision that did not constitute deficient performance. The district court concluded that this judgment was a reasonable application of *Strickland*. We agree.

Cave contends that counsel's decision not to present a medical expert was driven by his misunderstanding of law. The record belies this contention. As the district court explained, counsel purposefully developed and considered evidence of mental health mitigation, including expert testimony. In addition to determining that such testimony would not be particularly helpful to Cave's mitigation case, counsel did not want to "open the door" to potentially damaging information. Counsel did testify that, without his misunderstanding of law, his choices regarding the mental health evidence "would have been up in the air," but counsel conceded, "that doesn't mean that ultimately the decisions would have come out different."

On the whole, we think counsel's evidentiary-hearing testimony shows that, after developing and considering the available evidence, counsel determined that the risks of such evidence outweighed its potential benefits.[10] Because this conclusion formed the basis of the state court's determination that counsel's

---

[10] For example, counsel testified that, "on balance, that evidence was not helpful to our defense nor consistent with it. And my recommendation was that our case was best without it. Without the expert testimony."

strategic decisions were reasonable and did not amount to deficient performance, we affirm the district court's judgment that Cave was not entitled to relief on this claim.

3.

Cave also contends that his counsel was ineffective for allowing the introduction of testimony that Cave had been arrested for rape in Pennsylvania.[11]

At sentencing, Cave pursued the sole statutory mitigating circumstance available to him: no significant prior criminal history. After calling Cave to testify, counsel elicited that Cave had never been convicted of a crime, but had once been arrested in Pennsylvania on charges that were subsequently dropped. Counsel did not elicit the nature of the charge. On cross-examination, the prosecution inquired as to the charge of arrest, and Cave answered that it was "rape." Cave's counsel did not object.

We interpret Cave's arguments to advance two theories of ineffective assistance based on these facts. First, Cave contends that counsel was deficient for eliciting, in generic terms, the fact of his prior arrest. Alternatively, Cave argues that, even assuming that counsel was not ineffective for eliciting the fact of the

---

[11] Cave's ineffective-assistance arguments on this basis are not neatly cabined to counsel's misunderstanding of law. Nevertheless, we address the full breadth of Cave's arguments.

prior arrest, counsel was deficient for failing to object when the prosecution inquired as to the *nature* of that arrest. Given the inflammatory nature of rape accusations, the district court devoted a substantial portion of its order to these arguments. We agree with its conclusions.

a.

With respect to Cave's first theory, the Florida Supreme Court determined that counsel's performance was not deficient, saying:

> [C]ounsel's decision to seek the no-significant-history mitigator, even though doing so opened the door to the introduction of Cave's prior arrest, was not deficient. Counsel's key argument in mitigation was that Cave was not as culpable as his cohorts. This argument rested on two related premises: first, that Cave did not actually shoot or stab the victim and that he did not intend that the victim be killed; and second, that because of his criminal naiveté and the fact that he was unaware of his cohorts' more sophisticated criminal pasts, Cave could not have reasonably foreseen that his cohorts would kill the victim. Establishing the no-significant-history mitigator was crucial to this strategy, and if counsel had opted not to pursue it, it not only would have undercut that argument, but it also would have left Cave facing five aggravating circumstances without any statutory mitigating circumstances.

*Cave v. State*, 899 So. 2d at 1058.

We agree with the district court that the record demonstrates that "the Florida Supreme Court reasonably concluded [Cave's counsel] made a reasonable

24

strategic choice in seeking to establish the 'no significant criminal history' mitigator, and in choosing to preemptively bring out Mr. Cave's Pennsylvania arrest." *Cave v. McDonough*, at *10. The no-significant-criminal-history mitigator was the sole statutory mitigator available to Cave. In fact, in prior litigation, we chastised Cave's counsel for failing to pursue this particular line of mitigation. *See Cave v. Singletary*, 971 F.2d 1513, 1519 (11th Cir. 1992). As the Florida Supreme Court pointed out in its opinion, when a defendant seeks to establish the no-significant-criminal-history mitigator, the prosecution is entitled to rebut the same with direct evidence of criminal activity, including arrests. *Cave v. State*, 899 So. 2d at 1058. It is unclear whether the prosecution had any such "direct evidence" that would have allowed it to introduce the fact of this particular arrest.[12] However, in light of this uncertainty, it was not objectively unreasonable for counsel to "draw" the potential "sting" of the rape arrest by pre-emptively eliciting it on direct examination. In fact, counsel testified that by disclosing the arrest to the jury the defense was able to show that Cave had nothing to hide, thereby converting a potentially damaging piece of evidence into a potential asset. Regardless of our opinion, *de novo*, as to the reasonableness of counsel's strategic choice, this much is clear: the Florida Supreme Court's analysis of this claim was

---

[12] During post-conviction proceedings, the trial court expressed skepticism that evidence of this arrest would have been admissible over an objection at sentencing.

objectively reasonable. Consequently, the district court properly rejected this theory of ineffectiveness.

b.

Turning to Cave's second theory regarding counsel's failure to object, the Florida Supreme Court and the district court both expressed the view that the question was a difficult one. Ultimately, the Florida Supreme Court rejected this claim by determining Cave could not demonstrate the requisite prejudice. It offered this analysis:

> Cave's other argument—that counsel's failure to object when the State elicited the nature of the past arrest constituted ineffective assistance—is more difficult, but we conclude that this too is without merit. Even if counsel's performance in this respect was deficient, Cave is not entitled to relief because he has not demonstrated prejudice. Cave has not "show[n] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [penalty-phase] proceeding would have been different." When asked about the prior arrest on direct examination, Cave made clear that the charge was "dropped" and he "was not guilty." And after he revealed on cross-examination that the charge was rape, he reiterated that "not only [was that charge] dropped . . . [it was] proven to be a false charge." We recognize that Cave's protestations of innocence may not have been all that convincing to the jury, but the fact remains that the court did find that the no-significant-history mitigator had been established, and the judge's decision to accord it little weight did not rely on or even cite the past arrest. In fact, even the State conceded in closing argument that the

26

no-significant-history mitigator had been established. And in arguing that the jury should assign little weight to that mitigator, the State never once mentioned the past arrest, let alone the nature of that arrest. Rather, the State argued that "this mitigating circumstance pales when compared with any of those five aggravating circumstances that we just went over." Counsel's failure to object when the State asked Cave about the nature of his past arrest might well have amounted to deficient performance, but Cave has not demonstrated that he was prejudiced by the deficiency under the *Strickland* standard.

*Cave v. State*, 899 So.2d at 1058–59 (footnote omitted) (citations omitted).

The district court, likewise, gave this claim extended attention. It began by finding, *de novo*, that counsel rendered constitutionally deficient performance, declaring:

The mention of such an inflammatory charge had the potential for poisoning the jury in a case like Mr. Cave's, and [counsel] had a constitutional obligation to keep such unduly prejudicial evidence out of the penalty phase if such evidence was inadmissible under Florida law.

*Cave v. McDonough*, at \*11.

Nevertheless, upon turning to the prejudice prong, the district court determined that Cave was not entitled to habeas relief under AEDPA:

The Florida Supreme Court's ruling that Mr. Cave did not demonstrate prejudice under *Strickland* was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor was it based on

27

an unreasonable determination of the facts in light of the evidence presented. Mr. Cave testified—without contradiction—that the charge was false (and was dropped), the prosecutor did not mention the nature of the arrest in closing, the trial court ultimately found that Mr. Cave did not have a significant prior criminal history, and the trial court did not rely on the nature of the arrest in according the mitigating factor little weight. Although the issue would be a closer one if review were plenary, the Eleventh Circuit has made it clear that a federal habeas court is not to substitute its views for those of state courts under AEDPA because "an unreasonable application is different from an incorrect one."

*Cave v. McDonough*, at *12 (footnote omitted) (citations omitted) (internal quotation marks omitted).

We agree with the district court's analysis in its entirety, including its observation that this would be a very difficult question *de novo*. However, our review is limited to determining whether the state court's decision was unreasonable. That the Florida Supreme Court carefully weighed all the relevant considerations while forming its conclusion speaks to the reasonableness of its result.[13] We affirm the district court's judgment that Cave was not entitled to relief

---

[13] Cave challenges one particular foundation of the court's calculus, arguing that the prosecution did, in fact, mention the rape arrest again, based on the following excerpt from the prosecution's closing argument:

> Now again, the [mitigating circumstance] that deserves little weight is the first one about his prior criminal record, that's true, but it doesn't deserve much weight. This mitigating circumstance I submit to you *does not even exist* based on the evidence in this case.

It is possible that the excerpt contains a veiled reference to the inappropriately admitted

on this claim.

C.

For some time prior to the execution of Cave's co-defendant Bush, counsel for Cave and Bush worked together in an attempt to stay Bush's execution so that he could testify to Cave's limited role in the murder at Cave's sentencing. Their efforts were unsuccessful, and Cave's counsel chose not to perpetuate Bush's words via deposition in advance of his execution.

According to testimony from Bush's lawyer at Cave's evidentiary hearing, on the eve of his execution, Bush became distraught because "he felt responsible . . . for Mr. Cave's predicament." Bush told his lawyer that—contrary to several previous statements made in pursuit of his own interests—Cave's role in the crime was limited. Bush claimed that co-defendant Parker was "running the show." Just before the murder, Parker apparently announced to the others his intentions of killing the victim, saying that "he was going to do what he had to do." According to Bush, when Cave learned of Parker's intentions, he became upset and tried to convince Parker that the murder was unnecessary. When Parker refused to be swayed, Bush claimed that Cave withdrew from the scene and retreated to the

testimony, but the state court found otherwise. Given the presence of several concessions by the prosecution that the mitigating factor did exist in the same closing argument, we cannot say that the state court's finding was unreasonable.

29

vehicle. After Cave withdrew, Parker instructed Bush to stab the victim—which he did—and Parker killed the victim with a shot to the head.

Bush was executed the next day. Following his execution, Bush's counsel attempted to contact Cave's counsel and communicate the substance of Bush's statement. According to the evidentiary-hearing testimony, Cave's counsel failed to respond to those attempted communications.

Cave argues that his attorney was constitutionally deficient for two reasons. First, Cave argues that his attorney should have deposed Bush before his execution in order to preserve his testimony. Second, Cave argues that counsel was ineffective for failing to learn of Bush's "deathbed" statement and introduce it at sentencing.

The Florida Supreme Court addressed both of these arguments and determined that, even assuming counsel performed deficiently, Cave could not demonstrate *Strickland* prejudice. *Cave v. State*, 899 So. 2d at 1052. Because Bush's deathbed statement conflicted with two of his prior statements, as well as Cave's own confession and his 1996 sentencing testimony, the Florida Supreme Court concluded that the inconsistencies "would have undermined the credibility of Bush's deathbed statement and could have actually resulted in more harm than benefit." *Id.*

30

The district court concluded that the Florida Supreme Court's application of *Strickland* was reasonable, though it expressed the view that the prejudice inquiry would be a closer one under *de novo* review. We agree.

Under the prejudice inquiry, it is a post-conviction court's job to re-weigh the evidence of mitigation and aggravation as it would have existed but for counsel's unprofessional conduct. *See Sears v. Upton*, – U.S. –, 130 S. Ct. 3259, 3266 (2010). Considering the totality of the evidence, we cannot say that the state court's determination was an error beyond "fairminded disagreement." *See Richter*, 131 S. Ct. at 787. Therefore, we are unable to conclude that the Florida Supreme Court's prejudice determination was unreasonable. We affirm the district court's decision to that effect.[14]

D.

Cave also argues that his counsel was deficient for failing to object during *voir dire* when the prosecution inquired of jury members whether they could vote

---

[14] Our conclusion is bolstered by the fact that it is unclear whether Bush's deathbed statement would have been admissible at all. Counsel in this case had an opportunity to depose Bush and decided not to for strategic reasons. It is by no means certain that a later statement by Bush, even one made on the eve of execution, would have been admissible over a hearsay objection as a dying declaration. *See Malone v. State*, 72 So. 415, 416 (Fla. 1916) (per curiam) ("The utmost care and caution should be exercised by the court in the admission of dying declarations, since such declarations are necessarily a species of hearsay evidence and their admission in evidence is an exception to the general rule of evidence, which requires that the witness shall be sworn and the defendant given privilege of cross-examination.").

to impose the death penalty even "if it were to be shown that Mr. Cave was not the shooter." Cave argues that this line of questioning was manipulative and prejudicial, in that it implied the possibility that Cave *was*, in fact, the shooter.

The Florida Supreme Court rejected this claim on the merits, determining that Cave's allegations and the record supported neither a finding of deficient performance nor prejudice. We agree with the district court that there was nothing objectionable in the prosecution's line of questioning. Because "[c]ounsel cannot be labeled ineffective for failing to raise issues which have no merit," *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990), we affirm the district court's determination that the Florida Supreme Court reasonably applied *Strickland* to this claim.

IV.

Finally, Cave argues that Florida's death penalty scheme and his death sentence are unconstitutional in light of *Ring v. Arizona*, 536 U.S. 584 (2002). Cave acknowledges that this argument is foreclosed under controlling precedent, as *Ring* does not apply retroactively and his death sentence became final before the case was handed down. *See Schriro v. Summerlin*, 542 U.S. 348, 355–57, 124 S. Ct. 2519 (2004). We decline his invitation to revisit this decided issue.

V.

32

For the foregoing reasons, we affirm the judgment of the district court to deny Cave's application for a writ of habeas corpus in its entirety.

**AFFIRMED.**

EDMONDSON, Circuit Judge, concurs in the judgment.

HULL, Circuit Judge, specially concurring:

I concur in affirming the judgment of the district court and in Judge Wilson's opinion except for Section II-B. Because Cave's challenge to the state court's factual findings fails under § 2254(d)(2), we need not address § 2254(e)(1). *See Wood v. Allen*, 558 U.S. —, 130 S. Ct. 841, 845 (2010) ("We conclude . . . that the state court's factual determination was reasonable even under petitioner's reading of § 2254(d)(2), and therefore we need not address that provision's relationship to § 2254(e)(1). Accordingly, we affirm the judgment of the Court of Appeals on that basis."). Neither the district court's decision, nor this Court's decision here, turns on the distinction between the unreasonableness standard in § 2254(d)(2) and the separate clear-and-convincing-evidence standard in § 2254(e)(1). Thus, Section II-B's discussion of § 2254(e)(1) is merely dicta. Just as the United States Supreme Court limited its discussion to § 2254(d)(2) in *Wood v. Allen*, I would do so here.

Additionally, I am concerned that Section II-B quotes isolated parts of our precedents out of context and incorrectly characterizes what our precedents say, or do not say, about the relationship between § 2254(d)(2) and § 2254(e)(1). The decisions cited in Section II-B speak for themselves and Section II-B's characterization of them does not change what they hold or do not hold.